# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) Cause No. 4:22CR00461RWS |
| vs. | ) |
| | ) |
| MAUREEN WOODSON, | ) |
| Defendant. | ) |

## DEFENDANT'S SENTENCING MEMORANDUM

The odds were stacked against Maureen Woodson. Gambling had surrounded Maureen her entire life. As a child, Maureen would watch others bet on sports in the bar her parents owned. Maureen grew up there, in an environment full of drinking alcohol, sports betting, and gambling. As she got older, Maureen started driving her mother to the casinos.

Over time, this was a bonding experience for them, and it became a cornerstone of her relationship with her mother. As Maureen aged and built her own family, the gambling slowed. She had responsibilities and distractions: her husband, her son, and a great job. But the gambling did not cease completely. In 2006, Maureen's mother became very ill. During one of their last conversations, Maureen's mother asked her, "Who are you going to go gambling with now?"

Soon after, her mother passed away. In the same year, Maureen also lost her husband after he passed away from complications after a stroke and heart attack. These back-to-back losses turned Maureen's world upside down. Maureen was still grieving the loss of her mother, and now she had lost her husband as well. She was left to grieve and regroup on her own while raising her son, who was thirteen at the time. A year later, Maureen retired. Gambling became the only thing that could temporarily distract her from her loneliness. It was an escape from the sorrow she was feeling.

Prior to her husband's death, Maureen had someone to answer to, someone who knew her whereabouts and monitored her financial situation. But after he died, Maureen could go to the casino and not have to worry about coming home to an upset husband who would be questioning what she had done. She no longer had someone to lie to about how much she was spending or how much she had lost. Retirement only exacerbated the problem. As time went on, Maureen had less and less to distract herself from. Her son was reaching the age where he was out of the house more and more and was not interested in hanging out with his mom.

When there was something to celebrate or be happy about, she would go gambling. When she was sad or stressed, she would go gambling. Slowly but surely, it became an addiction. She would experience small wins here and there, but those few wins only fueled her addiction. Maureen never hit the jackpot. Overall, she was losing massive amounts of money.

First, she blew through her savings. Next, it was her retirement. Soon, she was broke. So, she had to start working again. This at least added more responsibility, but it did not solve her underlying addiction. She continued to struggle with impulsive gambling to the point that resulted in her taking money from her employer. She started doing it on a regular basis, and it ultimately landed her in criminal court.

In the DSM-5, gambling disorder was placed in a new category on behavioral addictions, reflecting research findings that show gambling disorder is similar to substance-related disorders in clinical expression, brain origin, comorbidity, physiology and treatment.[1] Approximately 3 million

---

[1] American Psychiatric Association, Gambling Disorder, DSM-5, accessed online at https://www.psychiatry.org/patients-families/gambling-disorder/what-is-gambling-disorder

to 4 million Americans have a gambling disorder.[2] Courts have acknowledged this change in research and considered a defendant's gambling addiction when sentencing below the guidelines.[3]

Maureen's addiction was built slowly throughout her life and brought on by stressors and mental health issues. Although it is one of the main underlying causes of her criminal conduct, Maureen knows she ultimately made these choices and must bear the consequences of those choices. She simply asks this Court to consider the core issues that led to her criminal conduct.

**Maureen's Commitment to Rehabilitation and Social Support**

Prior to being charged with this offense, Maureen went all in on treatment. She began attending Gambler's Anonymous (GA). Maureen did not wait until treatment was required by pretrial or the court. She sought treatment before she was even charged and aware of the potential sentence she was facing.[4] Now, Maureen has been in GA for a year. She has made connections with fellow members who know what she has gone through and understand those daily struggles on another level. See Ex. 1. Social support like this is essential to recovery.

These new friends will be there to hold Maureen accountable while she is under supervision. Along with her son and codefendant Donna, Maureen has a wide network of support to keep her on track. Family and other social support is incredibly important for someone working towards getting

---

[2] John Rosengren, How Casinos Enable Gambling Addicts, THE ATLANTIC, December 2016, available at http://www.theatlantic.com/magazine/archive/2016/12/losing-it-all/505814/.

[3] *United States v. Dikiara*, 50 F. Supp. 3d 1029 (E.D. Wis. 2014) (court analogized gambling addiction to drug addiction: "By physically hijacking the brain, addiction diminishes the addict's capacity to evaluate and control his or her behaviors. Rather than rationally assessing the costs of their actions, addicts are prone to act impulsively, without accurately weighing future consequences."); *United States v. Perez*, 2021 U.S. Dist. LEXIS 221381 * (D.C. CA. 2021) (Downward variance based upon consideration in part of defendant's gambling addiction).*United States v. Ruff*, 535 F.3d 999 (9th Cir. 2008) (defendant guilty of embezzling 650,000 from non-profit organization over course of three years, and guidelines 30-37 months, sentence of one day in jail and supervised release for three years on condition defendant spend one year in community treatment center to obtain counseling—not unreasonable in part because of defendant's gambling addiction); *United States v. Sadolsky*, 234 F.3d 938 (6th Cir.2000) (below guideline sentence proper where defendant's gambling disorder was a likely cause of his criminal behavior, given that he had already "maxed out" his own credit line before resorting to fraud to pay his gambling debts)

[4] Courts have acknowledged this factor when determining a sentence. See *United States v. Stern*, 590 F.Supp.2d 945, 954 (N.D.Ohio,2008) (downward variance granted due to defendant's therapy "in advance of being charged with any

3

their life back on track. Help from others lowers the risk of recidivism. See Shirley R. Klein et al., *Inmate Family Functioning*, 46 INT'L J. OFFENDER THERAPY & COMP. CRIMINOLOGY 95, 99-100 (2002) ("The relationship between family ties and lower recidivism has been consistent across study populations, different periods, and different methodological procedures."); Phyllis J. Newton, Jill Glazer, & Kevin Blackwell, *Gender, Individuality and the Federal Sentencing Guidelines*, 8 FED. SENT'G REP. 148 (1995) ("[T]he better family and social ties are maintained[,] the lower the recidivism rate,").[5]

### Maureen's Lack of Criminal History

Maureen lived sixty years before she began engaging in criminal activity. Other than this case and the corresponding offense conduct, she has no other criminal history. Overall, her history reflects a wife and mother who has been gainfully employed for all of her life to support her family, not a criminal. First time felony offenders have been acknowledged by courts to have significantly lower rates of recidivism.[6] Under 28 U.S.C. § 994(j), the Commission is charged with "insur[ing] that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense." The Commission's own research further shows that offenders with zero criminal history points have the lowest recidivism rates, even lower than offenders with only one criminal history point.

---

crime… The Court considers it a positive indication of defendant's commitment to refraining from future criminal conduct.").

[5] Courts have also explained that family encouragement aids in rehabilitation. *See United States v. Sayad*, 589 F.3d 1110 (10th Cir. 2009) (where defendant convicted of interstate delivery of 11 kilograms of cocaine and guidelines 57 months, sentence of probation is reasonable in part because, unlike in most cases, here strong family support will aid rehabilitation); *United States v. Wachowiak*, 412 F.Supp.2d 958 (E.D. Wisc. 2006) (below guideline sentence imposed in part because "the guidelines failed to account for the strong family support defendant enjoyed, which would aid in his rehabilitation and re-integration into the community"); *United States v. Smith* 2008 WL 1816564 (4th Cir. 2008) (unpub.) (below guideline sentence not abuse of discretion where district court noted among other things, that defendant had "strong family ties.").

Courts have considered a defendant's lack of criminal history when determining a sentence, even though criminal history is already considered in the Guideline calculation.[7] Maureen's criminal history is not one where she did have some prior convictions, but either they were too old or not serious enough to count. Maureen actually has zero criminal history. Those with zero criminal history points are grouped in with others who have some criminal history in Category I under the guidelines. That is why courts have given that score additional consideration when determining a proper sentence. Additionally, multiple courts have found that prison time is more significant and has greater effects on first time offenders.[8] Therefore, when the goals of sentencing can be met through ways other than incarceration, it would be unnecessary to risk those negative consequences that come from serving time in prison on someone like Maureen who has never spent any time incarcerated.

## Maureen's Work History

Maureen has had stable jobs for her entire adult life. Prior to working for Flordell Hills, Maureen was the office manager for Missouri Probation and Parole for over 34 years. She was a trusted, loyal, and dependable employee. See Ex. 2. This significant history of employment with no criminal conduct shows that Maureen is not some lifelong criminal who has a history of abusing her positions. Her criminal conduct in this case, although serious, is not evident of who Maureen truly is. Now, Maureen relies on social security as she is 68 years old. However, if she was to be

---

[6] See *United States v. Cabrera*, 567 F.Supp.2d 271 (D. Mass. 2008) (court imposed below guidelines sentence in part because "concerns about recidivism compel a sentence still substantially" lower, suggesting that individuals with zero criminal history points are less likely to recidivate than all other offenders.).

[7] See *United States v. Huckins*, 529 F.3d 1312 (10th Cir. 2008) (court's variance proper in part because this was defendant's first conviction); *United States v. Duane*, 533 F.3d 441 (6th Cir. 2008) (Because defendant had zero points, he might plausibly argue that even category I — which applies when a defendant has zero or one criminal history point(s) — overstated his criminal history to some degree."); *United States v. Cabrera*, 567 F.Supp.2d 271 (D. Mass. 2008) (court imposed below guidelines sentence in part because "concerns about recidivism compel a sentence still substantially" lower, suggesting that individuals with zero criminal history points are less likely to recidivate than all other offenders.).

incarcerated, those payments would stop and would inhibit her ability to begin paying restitution once she is sentenced.

Courts have considered a defendant's strong employment history when making a sentencing decision. See *United States v. Ruff*, 535 F.3d 999 (9th Cir. 2008) (below guidelines, community-based sentence not unreasonable in part because of defendant's "history of strong employment"); *United States v. Fuson*, 2007 WL 414265 (6th Cir. 2007) (unpub) (below guidelines, community-based sentence reasonable in part because defendant's work and support for his family was "entitled to some weight"); *United States v. Baker*, 445 F.3d 987, 992 (7th Cir. 2006) (below guidelines sentence affirmed in part due to defendant's "lack of a criminal history and his history of employment).

### Older Defendants and Lower Recidivism

Maureen is 68 years old. Courts are required under 18 U.S.C. § 3553(a)(2)(C) to consider the need to protect the public from future crimes of this defendant. When considering that need, the age of a defendant is relevant to determining the appropriate length of imprisonment. *United States v. Nellum*, 2:04-CR-30-PS, 2005 WL 300073 (N.D. Ind. Feb. 3, 2005). This is especially true when the Sentencing Commission and other researchers have determined that the likelihood of recidivism drops dramatically for those offenders over 50 years old, removing any compelling need to incapacitate or deter future criminal conduct on the part of the older offender.

In its 2004 study, the Sentencing Commission found that recidivism rates decline relatively consistently as age increases.[9] According to this study, recidivism rates decline steadily

---

[8] See *United States v. Paul*, 2007 WL 2384234 (9th Cir. 2007) (unpub.); *United States v. Baker*, 445 F.3d 987 (7th Cir. 2006); *United States v. Santoya*, 493 F.Supp.2d 1075 (E.D. Wisc. 2007); *United States v. Willis*, 479 F.Supp.2d 927 (E.D.Wis. 2007); *United States v. McGee*, 479 F.Supp.2d 910 (E.D. Wisc. 2007).
[9] *See* U.S. Sentencing Commission, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines 12, ex. 9 (2004), accessed at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/researchpublications/2004/200405_Recidivism_Criminal_History.pdf

with age, from 35.5% for offenders age 21 and younger to 9.5% for offenders over age fifty.[10] In *United States v. Presley*, the Court of Appeals directed the district court to reconsider its sentence after it failed to contemplate the impact the sentence would have on an older defendant. 790 F.3d 699, 703-04 (7th Cir. 2015). Sentencing judges need to consider the phenomenon of aging out of criminal activity. *Id.* at 701. Courts have previously declined to impose guideline sentences on defendants who, like Maureen, were over the age of fifty on the grounds that such defendants exhibit markedly lower rates of recidivism in comparison to younger defendants.[11]

Incarcerated individuals generally face substantial health risks, but those risks are increased when the individual comes in with health issues. According to a U.S. Justice Department Report, BOP institutions "lack appropriate staffing levels" to address the needs of an aging inmate population, and the "physical infrastructure of BOP institutions cannot adequately house aging inmates."[12] Aging inmates are also more costly to incarcerate primarily due to their medical needs.[13] Maureen has several health issues, including high blood pressure, an underactive thyroid, and arthritis. These conditions will impact Maureen's ability to stay healthy in prison, especially considering her physical limitations due to arthritis in her knees. Maureen asks this Court to consider her age and health issues when determining her sentence.

---

[10] *Supra,* note 2
[11] See, e.g., United States v. Aguilera, 06-CR-336, 2008 WL 4830802 (E.D. Wis. Oct. 28, 2008) (imposing a term of incarceration of 24 months on a 53-year old defendant where the Guidelines recommended a minimum of 37 months); United States v. Carmona-Rodriquez, No. 04 Cr. 667(RWS), 2005 WL 840464, at *5 (S.D.N.Y. Apr. 11, 2005) (imposing a term of incarceration of 30 months on a 54-year old defendant where the Guidelines recommended a minimum term of 46 months); United States v. Nellum, 2:04-CR-30, 2005 WL 300073, at *3 (N.D.Ind.Feb.3, 2005) (imposing a term of incarceration of 108 months on a 57-year old defendant where the Guidelines recommended a minimum of 168 months).
[12] U.S. Justice Dept. Report, *The Impact of An Aging Prisoner Population on the Bureau of Prisons*, (May 2015) Executive Summary Found at https://oig.justice.gov/reports/2015/e1505.pdf
[13] *Supra,* note 4

**Maureen's Pretrial Release**

After being indicted and released on bond, Maureen continued to engage in treatment. She has shown over the last 10 months that her mental health and continued recovery are her priority, making probation the optimal sentence. She was on a GPS monitor that entire time, following an eight a.m. to five p.m. curfew with no violations. She attended pretrial counseling twice a month for five months, then once a month for the next four months. This is on top of her GA meetings. Performance and commitment to treatment while on pre-trial release has been used by courts at sentencing.[14]

One of Maureen's main responsibilities is taking care of the home and her roommate Donna, who is also her co-defendant. Donna is 76 years old with a lot of health issues, and she no longer drives. In the last five years, she has suffered two falls, breaking both of her shoulders. Maureen does all of the shopping, cooking, and cleaning for them both. She is essentially Donna's caregiver, driving her to all of her medical appointments. Her role in Donna's life is incredibly important. Were Donna to be sentenced to a community-based sentence and Maureen sentenced to incarceration, Donna would lose her main caretaker.

**18 U.S.C. § 3553(a) Factors**

A sentence of five years' probation with a condition that Maureen complete 27-33 months of home incarceration would meet the goals set forth by 18 USC §3553(a)(2), which considers the need for the sentence imposed to:

(A)    reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense;

---

[14] *See United States v. Munoz-Nava*, 524 F.3d 1137 (10th Cir. 2008) (below guidelines sentence affirmed in part due to defendant's behavior while on a year-and-a-half pretrial release, which the district court found to be commendable, showing defendant is unlikely to reoffend); *United States v. Baker*, 502 F.3d 465 (6th Cir. 2007) (below guideline

  (B)  afford adequate deterrence to criminal conduct and

  (C)  protect the public from further crimes of the defendant, and

  (D)  provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Home incarceration is a significant punishment and severely restricts her freedom. Sending Maureen to a BOP facility at her age and with her health risks is not necessary to achieve a just punishment. Home incarceration also saves taxpayer money while allowing Maureen to continue to receive her Social Security payments and begin to pay restitution. Additionally, the felony conviction itself is punishment. Maureen's untarnished record is now ruined and her conviction will now follow her for the rest of her life.[15]

Additionally, probation has punitive aspects. Although the restrictions are not as severe as imprisonment, they are still significant and will restrict Maureen's freedoms. Requiring notification before traveling or moving, submitting to random searches, and checking in with a probation officer, in addition to paying back what she took, are all sufficient to ensure Maureen receives just punishment.

Regardless of the type of crime, empirical studies show there is no relationship between sentence length and general or specific deterrence. See Michael Tonry, Purposes and Functions of Sentencing, 34 Crime and Justice: A review of Research 28–29 (2006); Donald P. Green & Daniel Winik, Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders, 48 Criminology 357 (2010); Andrew von Hirsch, Anthony E.

---

sentence of probation with one year house arrest proper in part because he behaved "exceedingly well" while under supervision of pretrial services).

[15] This reality should be considered by courts at sentencing. See *United States v. Prosperi*, 686 F.3d 32 (1st Cir. 2012) ("Sometimes [courts do not] fully recognize the anguish and the penalty and the burden" that people face after receiving a felony conviction); *United States v. Wulff*, 758 F.2d 1121, 1125 (6th Cir. 1985) ("a felony conviction irreparably damages one's reputation."); *United States v. Smith*, 683 F.2d 1236, 1240 (9th Cir. 1982) ("The stigma of a felony conviction is permanent and pervasive.").

Bottoms, & Elizabeth Burney, Criminal Deterrence and Sentence Severity: An Analysis of Recent Research (1999) (all concluding there is no correlation between sentence length and crime rates). Furthermore, some research has shown that "prisons do not reduce recidivism more than noncustodial sanctions." Francis T. Cullen et al., Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science, 91 Prison J. 48S, 50S–51S (2011).

Section 3553(a) does not require the goal of general deterrence be met through a period of incarceration. Its legislative history shows the Senate contemplated that "it may very often be that release on probation under conditions designed to fit the particular situation will adequately satisfy any appropriate deterrent or punitive purpose." S. Rep. No. 98-225, at 92 (footnote omitted).

Simply being charged with this crime has deterred Maureen from ever getting involved with illegal activities again. Subjecting her to punishment through incarceration would likely not add any more deterrent effect than a community-based sentence. The progress she has made in her treatment would be stalled, and she would lose the connections she's built through GA.

Additionally, according to the Commission's Judiciary Sentencing Information System (JSIN), in Fiscal Year 2017-2021 according to national data, 57 percent of offenders sentenced under § 2B1.1 with a Total Offense level of 18 and who were Criminal History Category I (like Maureen) received a downward departure or variance.[16]  Counsel submits based on Maureen's age, health, lack of criminal history, and proactive treatment of her gambling addiction and demonstrated progress over the last year, she falls in that 57 percent. As such, the Court should consider affording her a chance at continued supervision in the community without the need for incarceration in the BOP.

Prison is not needed to meet the objectives of 3553(a).  To the extent the punishment needs to deter future misconduct, there are no concerns Maureen will return to a position where she has

10

any kind of control over money. Maureen understands the severity of her offense. She has shown shame and remorse. Saying sorry is an act you do to get past something, but shame and remorse are felt and demonstrated. Counsel would ask the Court to review Maureen's letter to the Court. This is an individual who understands what she did wrong and the consequences on the community. With true shame and remorse there can be meaningful rehabilitation.

Maureen has shown over the last year her commitment to treatment. The best way for her to receive treatment in the most effective manner is for her to continue fostering relationships that she has built over the last year in GA and continue seeing a therapist in the community.[17] There are many conditions and restrictions that can be placed on Maureen to ensure she is justly punished, deterred, and rehabilitated. Prison is not needed to meet those goals.

**Conclusion**

As founder of the Equal Justice Initiative Bryan Stevenson once said, "each person is more than the worst thing they've ever done." Maureen is no exception to this principle. Maureen spent over sixty years of her life free of crime. Maureen's gambling addiction puts in perspective how she came before the Court. Her consistent treatment and hard work over the last year shows she is motivated to getting her addiction under control. Based on the offense conduct and her personal characteristics, a sentence of five years' probation with a condition that Maureen complete 27-33 months home incarceration and pay full restitution would be sufficient but not greater than necessary to achieve the goals of 18 U.S.C. § 3553(a): punishment, protection of society, deterrence, and rehabilitation.

---

[16] Available at https://jsin.ussc.gov (§ 2B1.1 Total Offense level of 18, with Criminal History Category I).
[17] "Treatment interventions are more effective when provided to defendants while they are in the community rather than in an institutional setting." Kimberly A. Weibrecht, Evidence-Based Practices and Criminal Defense: Opportunities, Challenges, and Practical Considerations, August 2008, at 8.

11

WHEREFORE, for the foregoing reasons, Maureen Woodson respectfully requests the Court sentence her to five years' probation with a condition that she complete 27-33 months home incarceration and grant any other relief the Court deems just or proper.

>Respectfully submitted,
>
>FRANK, JUENGEL & RADEFELD,
>ATTORNEYS AT LAW, P.C.
>
>By */s/ Daniel A. Juengel*
>DANIEL A. JUENGEL (#42784MO)
>Attorney for Defendant
>7710 Carondelet Avenue, Suite 350
>Clayton, Missouri 63105
>(314) 725-7777

**CERTIFICATE OF SERVICE**

I hereby certify that on May 5, 2023, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following.

Hal Goldsmith
Asst. United States Attorney
111 South Tenth Street, 20th Floor
St. Louis, Missouri, 63102

                                                  */s/ Daniel A. Juengel*
                                                  DANIEL A. JUENGEL